## HENRY B. SMITH, Administrator, *versus* THOMAS B. STRONG.

In an action for a breach of the covenants of seisin and right to convey, contained in a deed of certain land from the defendant to the plaintiff, dated May 22, 1811, it appeared that the defendant had conveyed the same land to the plaintiff by a prior deed, which contained the following clause:—" By this deed I mean to convey all the lands lying &c., of which A. S. died the owner, and which I claim by virtue of his last will and testament, being all the lands I own in the State of New York." On this deed was indorsed an unacknowledged deed of the plaintiff, dated June 5, 1811, which was as follows:—" Whereas the defendant has executed another deed of the same premises, to be delivered to me upon the assignment of this conveyance to him, I do therefore, in consideration thereof, reassign and convey to the defendant and his heirs, the within-described premises." It was *held*, that the plaintiff was not estopped by his deed to deny the defendant's seisin and right to convey.

A grantor conveyed a large number of lots of land, described as lying in a tract of wild land called the Boston Purchase. Among these lots were two described as "long lots numbered 15 and 43, containing 140 acres each, more or less," which were originally included in the surveys of the Boston Purchase, but which, it had been ascertained previously to the date of the deed, were adjoining thereto. It was *held*, that the words of the deed were sufficient to pass the two long lots; for the words of general description are controlled by the particular description.

Where a survey of land was made in pursuance of a resolve of the legislature of New York, and the plan was deposited in the office of the secretary of state, it was *held*, that a copy of tne plan, verified by the oath of the surveyor, was competent evidence. But it seems that the original plan itself would not have been competent evidence, unless it had been thus verified.

So, a copy of a plan, alleged to have been filed in the office of the secretary of state of New York, by the persons under whom the party offering it in evidence claimed title, which was not verified by the surveyor's oath, was *held* incompetent evidence.

In an action brought in Massachusetts, upon a breach of the covenants of seisin and right to convey, where the land is situated in another State, the damages are to be assessed according to the rule adopted in Massachusetts.

In such action the measure of damages is the consideration paid, with interest from the date of the deed; but if the consideration cannot be ascertained, the value of the land at the time of the intended conveyance, with interest from the date of the deed, will be the measure of damages.

THIS was an action of covenant broken, brought by the plaintiff as administrator of Abiel Smith, deceased.

The covenants declared on were contained in a deed of the defendant to Abiel Smith, dated May 22, 1811, whereby he conveyed a large number of lots of land described as lying in a tract of wild land, called the Boston Purchase, in the State of New York, " the foregoing being the same and all the lands lying in the county of Broome, which were de-

vised to me by the will of Ashbel Strong." Among the lots so conveyed were two " long lots numbered 15 and 43, containing one hundred and forty acres each, more or less," which were situated north of the Boston Purchase and adjoining thereto.

The defendant covenanted that he was the true and lawful owner, and was lawfully seised, in his own right, of a perfect, absolute and indefeasible estate of inheritance in fee simple ; that he had good right, full power and lawful authority to grant and convey ; and that the grantee &c. should forever afterwards peaceably have, hold, occupy and possess, free from the hindrance or molestation of any person lawfully claiming the premises. The breaches alleged were in regard to the lots numbered 15 and 43, and were assigned by negativing the words of the covenants.

The defendant pleaded, that he was the true and lawful owner of the land, and was lawfully seised in fee, and had good right to convey, &c. ; on which issue was joined, — with the agreement that the defendant might also avail himself of every defence which he might lawfully make, in the same manner as if such defence had been set out in a special plea.

At the trial, which was before *Wilde* J., the defendant produced a deed to himself from Abiel Smith, dated June 5, 1811, which was as follows : — " Whereas the within-named Strong has executed another deed of the same premises to be delivered to me upon the assignment of this conveyance to him, I do, therefore, in consideration thereof, reassign and convey to the said Strong and his heirs, the within-described premises." This was written on the back of a deed from the defendant to A. Smith, dated February 16, 1810. The latter deed, after a description of the same lots, contained the following clause : — " By this deed, I mean to convey all the lands lying in the county of Broome, &c., of which the late Ashbel Strong Esq. died the owner, and which I claim by virtue of his last will and testament, being all the lands I own in the State of New York." The plaintiff objected to the introduction of the deed of Smith as immaterial, and because it was not acknowleged. It was however admitted.

Smith
*v.*
Strong.

The defendant produced a deed from William Billings and Israel Williams to Ashbel Strong, dated September 17, 1803, of one half of the lot numbered 43. Also, a copy of the will of Ashbel Strong, dated December 17, 1808, by which he devised to the defendant all his lands situated in Broome county, containing nearly 4000 acres, and lying within the Boston Purchase.

The plaintiff produced an exemplification of an indenture between the commissioners of the States of New York and Massachusetts, dated December 15, 1786, by which New York ceded to Massachusetts the soil and right to a tract of land containing 230,400 acres, described as lying north and adjoining Cox and Hooper's line and between Owego and Chenango rivers, which was afterwards called the Boston Purchase. Also, a record copy of a resolve of the State of New York, passed March 22, 1805, whereby the surveyor general was directed to cause a survey of the tract to be made.

Also the deposition of James Geddes, a deputy surveyor appointed by the surveyor general of New York, to make a survey of the land, according to the provisions of the resolve. Geddes testified that, by the survey, which was made in 1805, he ascertained that the whole of the " long lots," including those numbered 15 and 43, were not within the limits of the tract ceded to Massachusetts by New York, although they had been included in the surveys of the proprietors of the Boston Purchase, who derived their title from the State of Massachusetts. Geddes annexed to his deposition a copy, testified by him to be a true copy, of the map made by him in pursuance of such survey, which was duly authenticated, the original having been filed in the office of the secretary of state of New York. The defendant objected to the admission of the plan, but the objection was overruled.

The plaintiff then produced an exemplification of an act of the State of New York, passed April 9, 1813, directing the surveyor general to sell the whole of the " long lots," and proved that the two lots in question had been sold, in compliance with the provisions of this act, to Asahel Saxton and William Talbot, who had entered and continued to hold possession of them.

Smith
v.
Strong.

The defendant then offered in evidence a copy of a plan alleged to have been made and filed in the office of the secretary of state of New York, by the proprietors of the Boston Purchase ; but it was rejected on the ground, that it was not verified by the oath of the surveyor.

The jury found a verdict for the plaintiff, and assessed damages in the sum of $ 1500 ; that sum having been agreed upon, if the jury should find a verdict for the plaintiff, but subject to be enlarged, reduced or otherwise altered by the Court ; and in case the Court should give judgment for the plaintiff, the depositions of John W. Hurlbert and others were to be referred to for the purpose of determining the amount of the damages.

*April 5th*

S. *Hubbard* and H. *Hubbard*, for the defendant, contended that the lots numbered 15 and 43, did not pass by the deed of the defendant ; for they did not lie within the Boston Purchase and did not belong to Ashbel Strong, from whom the defendant claimed to derive his title. The deed purports to convey the same and all the lands lying in the county of Broome, that were devised to him by Ashbel Strong ; now if the lots in question were not so devised to him, he does not covenant for the title. *Worthington* v. *Hylyer*, 4 Mass. R. 196 ; *Jackson* v. *Clark*, 7 Johns. R. 224 ; *Gascoigne* v. *Barker*, 3 Atk. 8 ; *Anon.* Dyer, 50. The plaintiff is estopped by the deed of the intestate, Smith, to deny the seisin of the defendant ; for it refers to the first deed of the defendant, in which it is recited, that Ashbel Strong was the owner of the land, and that the defendant derived his title from him by devise ; and the plaintiff is bound by this recital. *Alison* v. *Rankin*, 7 Serg. & Rawle, 269. This case is similar to *Bennett* v. *Irwin*, 3 Johns. R. 363.

As to the admissibility of the plan of the deputy surveyor, Geddes, they cited *Denn* v. *Pond*, Coxe's (N. J.) R. 379.

On the question of damages, they cited *Kane* v. *Sanger*, 14 Johns. R. 210 ; *Wilkinson* v. *Scott*, 17 Mass. R. 249 ; *Guthrie* v. *Pugsley*, 12 Johns. R. 126 ; *Leland* v. *Stone*, 10 Mass. R. 459. As interest is allowed on the damages on account of the mesne profits, it ought to be limited in general to six years ; but no interest should be allowed here, where the subject of the covenant is wild land.

*Fletcher* and *Bartlett*, for the plaintiff, on the question of estoppel, cited 1 Saund. Pl. & Ev. 43 ; *M'Crackin* v. *Wright*, 14 Johns. R. 193 ; *Jackson* v. *Hoffman*, 9 Cowen, 271 ; *Blanchard* v. *Brooks*, 12 Pick. 47.

To the point, that the general words used in the deed, were merely an additional description, and not a limitation of the grant, they cited *Powell* v. *Clark*, 5 Mass. R. 355.

On the question of damages, they cited *Marston* v. *Hobbs*, 2 Mass. R. 433 ; *Bickford* v. *Page*, 2 Mass. R. 455 ; *Sumner* v. *Williams*, 8 Mass. R. 162 ; *Nichols* v. *Walker*, 8 Mass. R. 246 ; *Chapel* v. *Bull*, 17 Mass. R. 213 ; *Horsford* v. *Wright*, Kirby, 3 ; *Caswell* v. *Wendell*, 4 Mass. R. 108 ; *Leland* v. *Stone*, 10 Mass. R. 459 ; *Nelson* v. *Carrington*, 4 Munf. 332. The covenant is personal, and the rule of damages in Massachusetts must therefore be adopted.

*June 27th.*

WILDE J. delivered the opinion of the Court. Upon the facts reported, there can be no question that a breach of the defendant's covenant of seisin and title was well proved The defendant covenanted, that he was seised of a perfect, absolute and indefeasible estate of inheritance in fee simple, and he clearly had no such title ; so that this covenant was broken on the delivery of the deed. He undertook to convey, and the grantee agreed to purchase, an indefeasible estate ; and the defendant had no such estate to convey. The intended purchase, therefore, has wholly failed. Indeed it may well be doubted whether the defendant had any title sufficient to sustain a common covenant of seisin. He showed, it is true, a deed from Billings and Williams, purporting to convey a half of one of the lots, but there was no evidence that Billings and Williams were ever seised ; and a deed from a stranger having no seisin, will not convey a seisin to the grantee. But it is not necessary to give any opinion on this point. It is sufficient for the plaintiff to prove that the defendant was not seised of the estate, and had not the title he undertook to convey. For although the issue was joined on the seisin of the defendant, and his right to convey, without adverting to the quality of the estate, and the plea is not a full answer to the breaches assigned, yet as the plea was filed by consent, with the reservation of a right

to give any special matter in evidence, the form of the issue is not material, and the finding of the jury and the judgment of the Court must conform to the merits of the case as proved on the trial.   If then the evidence objected to by the defendant's counsel was rightly admitted, there can be no question that the plaintiff is entitled to judgment.

For there is clearly no foundation for the argument, that the plaintiff is estopped by the deed of Smith, the intestate, to deny the defendant's seisin and title.   The object and legal effect of that deed cannot be misunderstood.   It was merely to reassign all the title he had acquired under a prior deed from the defendant ; it contained no warranty, and was equivalent to the cancelling of the first deed, thus restoring matters to the state they were in before that conveyance.   Nor can it be maintained, that the two lots in question would not have passed by the defendant's deed if his title had been good, although they were not included in the general description of the granted premises, for the words of general description are controlled and rendered certain by the particular description of the two lots in question.   And it is perfectly clear that these two lots were intended to be conveyed.

The only remaining question to be considered, except the question of damages, is, whether the evidence reported was competent evidence to go to the jury ;  and we are of opinion that it was.   The copy of the plan annexed to the deposition of James Geddes, the surveyor, was proved by the deposition, and was in truth, by reference, made a part of the deposition.

The original survey or map was in the secretary's office in the State of New York, and the copy being verified by the oath of the surveyor, was properly admitted.   If it had not been thus verified, it would clearly have been incompetent, and so would the original have been.   The copy of a plan offered by the defendant's counsel was not thus verified, and was for that reason rejected, and as we think, rightly.

On the question of damages we have found it difficult to lay down any certain rule, it being hard to ascertain the value of the land at the time of the intended conveyance, or the price given by the intestate.   If that could be ascertained,

Smith
v.
Strong.

it would undoubtedly be the proper measure of damages. But the opinion of witnesses, after such a lapse of time, will differ much as to the value of the land ; and it is even more difficult to estimate the value of the notes which were given up to Hurlbert, as the consideration of the deed. It is not to be expected that on these points any additional and more satisfactory evidence can be obtained. Such being the intrinsic difficulty of ascertaining the actual consideration of the deed, we think the most certain rule of assessing the damages is, to take the price paid by Hurlbert to the defendant as the true value of the land. He was allowed one dollar per acre for the whole tract. There is no evidence that the lots in question are over or under an average value. So that we think one dollar per acre would be a fair estimate of the value of the land at the date of the defendant's deed. This amount, with interest from the date of the deed to the present time, the plaintiff is entitled to recover, as the defendant's covenant of seisin and title was broken on the delivery of his deed, and the intended conveyance has wholly failed.

*Judgment for the plaintiff.*